**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARY KAY GALLAGHER | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 3:08-cv-2209 |
| v. | : | |
| | : | |
| MHM CORRECTIONAL SERVICES | : | (JUDGE CAPUTO) |
| | : | (MAGISTRATE JUDGE BLEWITT) |
| Defendants | : | |

## MEMORANDUM

Presently before the Court are Magistrate Judge Blewitt's Report and Recommendation ("R & R") of April 23, 2010 (Doc. 36) and Plaintiff Mary Kay Gallagher's Objections to the Magistrate Judge's R&R (Doc. 37). Magistrate Judge Blewitt recommended that Defendant's Motion for Summary Judgment (Doc. 16) be granted as to the federal claims and that this Court decline to exercise supplemental jurisdiction over the remaining state law claim. This Court will adopt in part and reject in part Magistrate Judge Blewitt's recommendation; this Court will grant summary judgment in favor of Defendant on all counts for the reasons discussed more fully below.

## BACKGROUND

Plaintiff Mary Kay Gallagher began working for Defendant MHM Correctional Services, Inc. ("MHM") as their Director of Nursing ("DON") on September 12, 2005. (Doc. 17, Ex. 10.) MHM has a contract with the Pennsylvania Department of Corrections ("DOC") to operate the mental health unit ("MHU") at the State Correctional Institution in Frackville, Pennsylvania ("SCI Frackville"). (Whitney Aff. ¶ 3.) Because MHM's success as a company depended so heavily on maintaining its contract with SCI-Frackville, MHM stressed to its employees the importance of maintaining a good relationship with its clients and comporting themselves in

a respectful manner in order to give clients a good impression of MHM. (Whitney Aff., Ex. A.)

At some point in January 2007, Plaintiff was involved in an incident wherein two corrections officers were "writing up" an inmate on the MHU; Plaintiff, believing that the inmate was mentally incapable of understanding the meaning or import of being "written up," referred to the inmate as either a "freaking retard" or "fucking retard."[1] Plaintiff testified at her deposition that she was simply giving her diagnosis that the inmate was incapable of comprehending his actions, but that she may have used this language in the course of a passionate discussion she was having with the corrections officers. (Gallagher Dep., 30:1-31:25, June 25, 2009.) This incident was reported to the DOC, which resulted in Plaintiff being given a "Written Report of Counseling" that stated that her conduct was below company standards. (Gallagher Dep. 35:5-10; Doc. 17, Ex. 15.)

On April 24, 2007, Plaintiff had another run-in with co-workers Ardie Kissinger and Wendy Flail; according to Plaintiff, she would regularly eat lunch with Kissinger and Flail, but on the aforementioned date, they left the MHU to go eat lunch without telling Plaintiff. (Gallagher Dep. 138:9-19.) Plaintiff became angry with them and confronted them in the lunchroom, in front of approximately ten (10) other people, including DOC employees; raising her voice and admittedly losing her temper, Plaintiff stated that she had been looking for Kissinger and Flail "with [her] thumb up [her] butt." (Gallagher Dep. 140:20-143:3.) However, according to Flail, Gallagher called Kissinger and Flail "fucking pricks" and said she had been waiting for them "with her thumb up her ass." (Flail Aff. ¶ 6.) Several witnesses reported the

---

[1] Plaintiff claims that she would not have called the inmate a "fucking retard," however the accounts of several people state that she did so. Because this Court is considering this case on summary judgment, we will take the facts in the light most favorable to the Plaintiff.

incident to DOC Superintendent Robert Shannon, who investigated the issue; Plaintiff's version of the incident differed greatly from those of the witnesses and she completely denied using any profanity. (Whitney Aff., Ex. C.) Superintendent Shannon reported to Charles Whitney, MHM's Senior Human Resources Business Partner, that Plaintiff's version of the events was untruthful and that "she deliberately lied to come off better in her account." (*Id.*) On May 7, 2007, Shannon sent an e-mail to Whitney stating "I've spoken to a few staff in recent days and all are viewing the possibility of [Plaintiff] returning as a huge mistake. I would much prefer that she be left (sic) go." (Whitney Aff., Ex. D.) As a result of this incident, Plaintiff's employment with MHM was terminated on May 9, 2007. (Whitney Aff., Ex. E.)

Plaintiff contends that she was fired because of her age and gender; Plaintiff is a woman who was born on September 8, 1956. (Compl. ¶ 3.) When Plaintiff was hired as DON, Defendant claims that her supervisor was the MHU Program Director, Dave Mont, and that MHM's Pennsylvania Regional Program Director was Sue Siroki (Doc. 18 at ¶ 10); Plaintiff, however, asserts that Mont was the MHU Unit Manager, and that Siroki was the Program Director (Doc. 29 at ¶ 10).

Mont gave notice that he was going to retire in early 2006; he stayed on with MHM for a few months to assist with the transition. Upon Dave Mont's retirement, Plaintiff went from being DON to DON (Administrative); Plaintiff received a raise and took on administrative duties in addition to her normal duties as DON. (Gallagher Dep. 102:2-105:23). According to Plaintiff, these new duties included all of Mont's prior responsibilities. (Gallagher Dep. 106:6-8.) Plaintiff testified that she hired Ardie Kissinger a few months after she was given the title of DON (Administrative) to be the clinical coordinator for the MHU. (Gallagher Dep. 111:24-112:22.) Plaintiff claims that she was then later terminated to give Ardie Kissinger, a younger

3

male, her position. (Gallagher Dep. 121:20-122:1.) She claims that the charges against her were "trumped up" in order to fire her because she was a woman over the age of forty (40) and because MHM wanted Ardie Kissinger to take over Plaintiff's position. Plaintiff testified that the evidence of discrimination against her was that she was terminated and replaced by a younger male, and other women were also fired by MHM. (Gallagher Dep. 122:21-125:1.)

On December 9, 2008, Plaintiff filed a Complaint alleging that her termination from employment by MHM constituted gender discrimination in violation of Title VII (Count I), age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") (Count II), and violation of the Pennsylvania Human Rights Act ("PHRA") (Count III). On November 9, 2009, MHM moved for summary judgment on all counts. (Doc. 16.) On April 23, 2010, Magistrate Judge Blewitt issued an R&R recommending that summary judgment be granted on the ADEA and Title VII claims, and that this Court should decline to exercise supplemental jurisdiction over the state law PHRA claim. (Doc. 36.) Plaintiff filed Objections on May 10, 2010. The motion has been fully briefed and is ripe for disposition.

**STANDARD OF REVIEW**

I.      **Objections to the Report and Recommendation**

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F.

Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994).  Uncontested portions of the report may be reviewed at a standard determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7.  At the very least, the Court should review uncontested portions for clear error or manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## II.      Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled

to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Plaintiff claims that Defendant terminated her employment in violation of Title VII, the ADEA, and the PHRA. Both Title VII and the PHRA make it unlawful for an employer to

discharge an employee on the basis of that employee's race, color, or national origin.[2] 42

U.S.C. § 2000e-2(a)(1); 43 P.S. § 955(a).  The legal analysis is identical for both statutes.

*Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) (citing

*Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000)). Similarly,

"the same legal standard applies to both the ADEA and the PHRA and therefore it is proper

to address them collectively." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005)

(citing *Glanzman v. Metropolitan Management Corp.*, 391 f.3d 505, 509 n.2 (3d Cir. 2004)).

Furthermore, both ADEA and Title VII disparate treatment claims, such as the claims

presented by Plaintiff here, are examined using the familiar *McDonnell-Douglas* burden-

shifting test. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (citing *Newman v. GHS

Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995)). Therefore, this Court will consider all

three of Plaintiff's claims collectively using the *McDonnell-Douglas* framework.

## I.      Prima Facie Case

In order to make out a prima facie case for employment discrimination, the Plaintiff

must prove that 1) she was a member of a protected class, 2) she was qualified for the

position, 3) she was subjected to an adverse employment decision, and 4) circumstances that

give rise to an inference of unlawful discrimination. *Waldron v. SL Industries, Inc.*, 56 F.3d

491, 494 (3d Cir. 1995) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248,

253 (1981)).

---

[2]      This Court realizes that it *may* decline to exercise supplemental jurisdiction over pendent state
law claims once all the federal claims have been dismissed; however, because judicial
resources have already been expended on this case and the PHRA claims follow the same
legal framework as the federal claims, this Court will exercise its discretion to maintain
supplemental jurisdiction over the PHRA claim.

In this case Plaintiff has clearly meets the first three prongs; she is female and over forty (40) years old, was qualified to perform the position of DON, and was terminated from employment. Although Defendant contends that Kissinger replaced Dave Mont, and not Plaintiff, we must take the facts in the light most favorable to Plaintiff as the non-moving party. Plaintiff states that she was replaced by Ardie Kissinger, a younger male. This is sufficient to create a genuine issue of material fact that there were circumstances that give rise to an inference of discrimination. Therefore, Plaintiff has successfully made out a prima facie case for the purposes of her Title VII, ADEA and PHRA claims.

## II.      Legitimate Non-discriminatory Reason

Having met her burden to prove a prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). An adequate, nondiscriminatory reason for the adverse action taken against Plaintiff serves to "dispel[] the inference of discrimination arising from Plaintiff's initial evidence." *Keller*, 896 F.2d at 797. To satisfy its burden, Defendant need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Rather, Defendant must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.*

Defendant states that Gallagher was fired because she used offensive language toward co-workers during heated exchanges on two occasions, confronted her co-workers in front of several members of the DOC staff, and MHM was urged by Superintendent Shannon of the DOC, MHM's client, to terminate Plaintiff's employment. This is a sufficiently

8

legitimate reason for Defendant to meet its burden.

## III.    Pretext

Following Defendant's production of its non-discriminatory reason for terminating Plaintiff's employment, Plaintiff then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Defendant are but a pretext, aimed at concealing Defendant's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257). To survive a summary judgment motion, Plaintiff must present "some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve [Defendant's] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[A]n employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant . . . evidence that no discrimination had occurred." *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 673 (3d Cir.2002). However, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.

Plaintiff has not produced any evidence by which a fact finder could reasonably disbelieve Defendant's proffered reason or believe that invidious discrimination more likely than not motivated MHM's decision. On two occasions, Plaintiff's behavior was investigated following heated verbal confrontations with members of both the DOC and MHM staff. MHM,

as a contractor with the DOC, needed to keep its client happy if it had any hope of maintaining its contract. Following the lunchroom incident with Flail and Kissinger, an investigation was undertaken, and Superintendent Shannon, a DOC supervisor, stated that he would prefer if Plaintiff were fired. MHM followed this advice.

To combat this evidence, Plaintiff has only stated that she believes she was discriminated against because she was replaced by Kissinger. While this may be sufficient to make out a prima facie case, it is not sufficient to prove pretext. Plaintiff also names several woman whose employment was terminated by MHM. That alone, without more, is not enough to create a genuine issue of *material* fact about whether *Plaintiff* was more likely than not fired because of her age or gender. While Plaintiff argues about the specific verbiage she may have used or the exact sequence of events during the aforementioned confrontations, these difference are not material for the purposes of this case. Whatever was said during the argument with Flail and Kissinger, it was serious enough for several witnesses to come forward and for the DOC, MHM's client, to become involved. As a result of this investigation, Superintendent Shannon believed that Plaintiff was lying about the incident and that she should be terminated. Whether or not she said the things alleged by the witnesses, or whether she was actually lying to Superintendent Shannon is immaterial; what matters is that the DOC, MHM's client, believed it would be best for her to be terminated. Plaintiff has not produced any evidence would suggest that any member of MHM terminated her employment because of her age or gender. As such, Plaintiff has not created a genuine issue of material fact that would show that MHM's legitimate non-discriminatory reason was a pretext for gender or age discrimination. Therefore, summary judgment will be granted in favor of Defendant on all counts.

## CONCLUSION

For the foregoing reasons, the Court will adopt in part and reject in part Magistrate Judge Blewitt's recommendation and grant summary judgment in favor of Defendant MHM on all counts. An appropriate order follows.


August 31, 2010                                            /s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                           United States District Judge

| | | |
|---|---|---|
| MARY KAY GALLAGHER | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 3:08-cv-2209 |
| v. | : | |
| | : | |
| MHM CORRECTIONAL SERVICES | : | (JUDGE CAPUTO) |
| | : | (MAGISTRATE JUDGE BLEWITT) |
| Defendants | : | |

## ORDER

**NOW**, this __31st__ day of August, 2010, after consideration of Magistrate Judge

Blewitt's Report and Recommendation (Doc. 36) and of Plaintiff's objections to the Magistrate

Judge's Report and Recommendation (Doc. 37), **it is hereby ORDERED** that the Magistrate

Judge's Report and Recommendation is **REJECTED in part and ADOPTED in part** as

follows:

1) The Recommendation that Defendant's Motion for Summary Judgment
be granted as to Counts I and II is **ADOPTED.**

2) The Recommendation that this Court decline to exercise supplemental
jurisdiction over Count III is **REJECTED**. Defendant's Motion for
Summary Judgment on Count III is **GRANTED**.

3) **JUDGMENT IS ENTERED** in favor Defendant.

4) The Clerk of Court shall mark this case as **CLOSED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge